OTTWAY LEON CURTIS, SR. *v.* STATE OF MARYLAND

[No. 966, September Term, 1976.]

*Decided October 13, 1977.*

460

The cause was argued before GILBERT, C. J., and MOYLAN and MASON, JJ.

*Fred Warren Bennett, Assigned Public Defender,* for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Charles Strong, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellant, Ottway Leon Curtis, Sr., is presently appealing from the granting by Judges James F. Couch, Jr. and Robert J. Woods, in the Circuit Court for Prince George's County, of the State's Motion to Dismiss his second Post Conviction Petition.

The appellant was initially convicted on September 14, 1967, in the Circuit Court for Prince George's County of murder in the first degree. That conviction was appealed and we affirmed it in *Curtis v. State,* 4 Md. App. 499, 243 A. 2d 656. *Certiorari* was subsequently denied by the Court of Appeals on January 19, 1969. The appellant then petitioned for post conviction relief and that petition was denied on May 28, 1970. In an unreported per curiam opinion, we denied leave to appeal.

The present and second petition under the Uniform Post Conviction Procedure Act was filed in Prince George's County on March 29, 1976. In it, the appellant raised as issues the ineffective assistance of counsel both at his original trial and upon his direct appeal to this Court from

the trial court's verdict. The State filed a Motion to Dismiss the Amended Petition on the grounds that the issue had been waived by virtue of not having been raised in the course of the first Post Conviction Petition. The appellant filed an Opposition to the Motion to Dismiss, claiming therein that he had received ineffective assistance of counsel at his first post conviction hearing and that this, coupled with his own intellectual inadequacies, constituted the "special circumstances" explaining why he had not raised the issue on the earlier occasion. After a hearing in open court on August 23, 1976, Judges Couch and Woods granted the State's Motion to Dismiss. The appellant filed a timely Application for Leave to Appeal from that judgment and on November 8, 1976, we ordered the case transferred to the regular appeal docket.

The controlling law for present purposes is Article 27, §645A: "Right of appeal of convicted persons," which reads, in pertinent part:

"(c) *When allegation of error deemed to have been waived.* — For the purposes of this subtitle, an allegation of error shall be deemed to be waived when a petitioner could have made, but intelligently and knowingly failed to make, such allegation before trial, at trial, on direct appeal (whether or not said petitioner actually took such an appeal), in any habeas corpus or coram nobis proceeding actually instituted by said petitioner, in a prior petition under this subtitle, or in any other proceeding actually instituted by said petitioner, unless the failure to make such allegation shall be excused because of special circumstances. *The burden of proving the existence of such special circumstances shall be upon the petitioner.*

When an allegation of error could have been made by a petitioner before trial, at trial, on direct appeal (whether or not said petitioner actually took such an appeal), in any habeas corpus or coram nobis proceeding actually instituted by said

petitioner, in a prior petition under this subtitle, or in any other proceeding actually instituted by said petitioner, but was not in fact so made, *there shall be a rebuttable presumption that said petitioner intelligently and knowingly failed to make such allegation.*" (Emphasis supplied)

We hold that the hearing judges were correct in granting the State's Motion to Dismiss. Even if the evidence as to the waiver of the contention were equivocal, which we are not suggesting, the statute places the burden of proof squarely upon the appellant. We hold that he did not show such "special circumstances" as would excuse him from his failure to raise the allegation of error in his first Post Conviction Petition. Similarly, we hold that the appellant did not adequately rebut the presumption that he "intelligently and knowingly failed to make such allegation" in the earlier petition.

In coming to grips with a contention such as that now before us, there is involved not simply the literal state of the law, which works against the apppellant, but also policy considerations of deeper import. The appellant was initially afforded a trial in the Criminal Court, then an appeal to this Court, then a Petition for Certiorari to the Court of Appeals, then a hearing on his first Post Conviction Petition and then an application for leave to appeal to this Court from the denial of that petition. To insert yet a sixth or a seventh screen into the criminal process in an effort to catch even the remotest possibility of arguable error is to pass far beyond the point of diminishing returns. The pervasive complaint about the criminal justice system as it exists today is that there is no finality. The salutary purpose of the Uniform Post Conviction Procedure Act is to consolidate all possible allegations of error and to dispose of them in a single hearing. Lightly to erode that purpose is, in our judgment, to do a great disservice to our law in the larger sense.

Whether couched in terms of "special circumstances" or in terms of the lack of "a knowing and intelligent waiver," the

appellant is pushing upon us the same facts. He urges upon us his seventh-grade education, his IQ of 72, his lack of legal training and his history of alcoholism as demonstrating that he needed the effective assistance of counsel. There is no quarrel with that premise as far as it goes. From this, he advances the further proposition that the mere failure of counsel in the first Post Conviction Petition to raise the issue of ineffective assistance of trial counsel is, *ipso facto*, such ineffective assistance at the post conviction level as to constitute a "special circumstance" and to fend off the otherwise foreclosing effect of waiver. We cannot buy that proposition. Almost every petitioner under the Uniform Post Conviction Procedure Act is a layman, untrained in the law, who needs the effective assistance of counsel. The logical extension that would follow from this appellant's present contention would be that convicted prisoners could continue to raise endless allegations of error in endless petitions, simply because earlier counsel upon earlier petitions had not thought to advise them as to the possibility of such contentions. The effort of the law to achieve some finality would be totally sabotaged.

What the appellant urges upon us is a paradox: The failure to raise a contention at the earliest possible opportunity constitutes a waiver of that contention, but the failure of counsel to urge the contention constitutes, by definition, ineffective assistance of counsel so as to negate the waiver. The striving for finality is stillborn.

In stating the case most fully against the appellant, ironically we do indirectly what we are relieved of all necessity of doing directly — reviewing at least summarily the effective assistance of counsel at earlier stages. We look first to the assistance of counsel rendered at the first Post Conviction Petition hearing. It is a truism that as a basis for post conviction petition review, only errors relating to the validity of the original judgment are properly cognizable. Cf. *Creswell v. Director,* 2 Md. App. 142, 233 A. 2d 375; *Robinson v. Director,* 3 Md. App. 222, 238 A. 2d 124. The effective assistance of counsel at the post conviction level is not an issue in and of itself, but it may be at least an aspect of the

collateral issue of whether the failure to raise a contention at that level constitutes a waiver of that contention. In his first Post Conviction Petition, the appellant, with the assistance of counsel, raised four issues, which are unnecessary to recite here. Although we denied leave to appeal, the issues raised were arguable and were well argued. We perceive no evidence of ineffectiveness upon the part of that counsel. To agree with the appellant here would be to hold that the failure of that counsel to raise at that time the contention that trial counsel had been ineffective was itself ineffectiveness *per se*. We decline to do so, for that would totally subvert §645A. We note, moreover, that from the vantage point of that Post Conviction Petition counsel looking back at the direct appeal and beyond that back to the original trial, there was no good reason to raise the issue of ineffectiveness of earlier counsel.

In the first place, the issue, by definition, does not apply to the appellate stage but only to the trial stage. Even at the trial stage, trial counsel attempted resourcefully to defend against the murder charge on the very pertinent grounds of insanity. That he focused his defense on that area and did not 1) anticipate *Mullaney v. Wilbur*, 421 U. S. 684, 95 S. Ct. 1881, 44 L.Ed.2d 508 (1975), as most did not, and 2) argue a "diminished responsibility" theory that has never been accepted in Maryland law did not constitute ineffective assistance of counsel. The applicable standard in this regard was well set out by *State v. Merchant*, 10 Md. App. 545, 551, 271 A. 2d 752:

> "Mere errors in trial tactics are not sufficient to constitute incompetency of counsel. *Hall v. Warden*, 224 Md. 662, 665; *Gullion v. Warden*, 3 Md. App. 263, 265; *Henry v. Mississippi*, 379 U. S. 443, 13 L.Ed.2d 408. Furthermore, failure to raise an available defense at trial does not, in itself, constitute incompetency of counsel. Annotation at 74 A.L.R.2d 1390, 1449."

Perceiving no ineffectiveness at the trial state, the post conviction stage attorney had no reason to suggest ineffective assistance as a ground for post conviction relief.

A parting word is in order on the subject of the word "waiver." The appellant leans heavily upon the language of *Johnson v. Zerbst,* 304 U. S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461 (1938), which recites that:

" '[C]ourts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege."

Part and parcel of this principle is usually the follow-up recitation from *Carnley v. Cochran,* 369 U. S. 506, 516, 82 S. Ct. 884, 8 L.Ed.2d 70 (1962), which states that:

"Presuming waiver from a silent record is impermissible."

Initially, it must be noticed that waiver is not a single, monolithic phenomenon. Pertinent is our observation in *Miller v. Warden,* 16 Md. App. 614, 615, 299 A. 2d 862:

"The only thing that can be said about constitutional waiver in the abstract is that nothing can be said about constitutional waiver in the abstract. It is as protean in its manifestations as the number of constitutional rights which there are to be waived multiplied by the number of circumstances in which they may be waived. It is unnecessary in deciding the case before us to attempt to analyze this shifting quality of waiver in its manifold contexts. Even a partial cataloguing of its applications illustrates the breadth of the spectrum through which it vacillates — operating at times with fastidious forbearance, at times blithely and summarily, and frequently with coquettish inconstancy."

Neither is "the effective assistance of counsel" a single, monolithic phenomenon. When it comes to a waiver of the total package — the very presence of a lawyer at one's side

during the course of a trial — the rigid *Johnson v. Zerbst* waiver standard is appropriate and waiver, quite properly, never will be presumed from a silent record. The Sixth Amendment right to the assistance of counsel at other "critical stages," however, shades off gradually in terms of our reluctance to presume waiver either from the actions of the accused or from his complete inaction. An accused has the right to the assistance of counsel during the course of a custodial interrogation. *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966). He must be informed of that right. Once having been informed, however, his waiver of it is implicit in a *prima facie* showing that a subsequent confession was freely and voluntarily made. *Barnhart v. State,* 5 Md. App. 222, 246 A. 2d 280. An accused has the right to the assistance of counsel when he is placed in a police lineup. *United States v. Wade,* 388 U. S. 218, 87 S. Ct. 1926, 18 L.Ed.2d 1149 (1967). Yet a denial of that right will avail him naught, if he fails to object at trial either to direct evidence of that lineup identification or to a courtroom identification possibly stemming from that lineup identification. *Smith and Samuels v. State,* 6 Md. App. 59, 250 A. 2d 285.

Although the waiver of the total package, the very presence of a lawyer at one's side during trial, will not be presumed from a silent record, it by no means follows that the waiver of lesser, constituent elements that go into that totality may not be presumed from a silent record. Even when dealing with Sixth Amendment constitutional rights, we said in *Miller v. Warden, supra,* at 16 Md. App. 618-620:

> "In the area of Sixth Amendment protections, it cannot seriously be maintained that a lawyer's 'waiving of the reading of the indictment' will not bind his client in terms of the right 'to be informed of the nature and cause of the accusation.' Nor can it be maintained that the right to 'an impartial jury' requires an affirmative explanation of the right to ask for a change of venue, the right to challenge the array, the right to propound certain

voir dire questions, the right to challenge for cause and the right to exercise peremptory challenges followed by an express waiver of such rights from the mouth of the accused.

The Sixth Amendment right of confrontation reveals the sliding scale between the degree to which a right is waived and the degree of waiver required at its most volatile. In *Brookhart v. Janis*, 384 U. S. 1, 86 S. Ct. 1245, 16 L.Ed.2d 314, the agreement, by counsel, that 'he would not contest the State's case or cross-examine its witnesses but would require only that the State prove' a *prima facie* case, was deemed to be tantamount to a plea of guilty and the rigid waiver standards of *Johnson v. Zerbst* were observed. There a blanket waiver of all cross-examination of all witnesses was involved. A far lesser question, if not in kind at least in degree, would obviously be presented where a defense attorney agrees to stipulate to the testimony of a single minor or non-controversial witness. Sound trial tactics frequently dictate the acceptance by way of stipulation of a post-mortem autopsy protocol, a ballistics report, a chemist's analysis of suspected drugs, and other reports from the local and national crime laboratories, rather than requiring the experts who conducted the tests to appear in court. Each of these stipulations involves, to be sure, a waiver of the right of confrontation, but of a type frequently indulged in throughout a trial. The right to cross-examine a witness is an integral part of the right of confrontation. *Pointer v. Texas*, 380 U. S. 400, 85 S. Ct. 1065, 13 L.Ed.2d 923. The remarks of Judge Thompson in *Zimmerman v. State*, 9 Md. App. 488, 498, 265 A. 2d 764, 771 (dissenting opinion), are appropriate here:

> 'An accused has a federal constitutional right to cross-examine witnesses against him, *Bruton v. United States*, 391 U. S.

123, 88 S. Ct. 1620, 20 L.Ed.2d 476. Does this mean that everytime a defense attorney decides not to cross-examine a particular witness the trial must be stopped while inquiry is made as to whether or not the accused is personally making an intelligent and knowing waiver? I think not.'

Further down the sliding scale would be the non-objection by counsel to any shred of testimony involving hearsay information. It cannot seriously be contended that the trial must suspend while a defendant is examined as to the knowledgeability and voluntariness of each passing lapse of total confrontation or that counsel is incapacitated from acting on his own best judgment each time he foregoes an objection or each time he announces, 'No questions.' The most intriguing variation upon the relinquishment or abandonment of the right to confrontation is that where a defendant may lose his very right to be present at the trial because of waiver through misconduct. *Illinois v. Allen*, 397 U. S. 337, 90 S. Ct. 1057, 25 L.Ed.2d 353; *Jones v. State*, 11 Md. App. 686, 276 A. 2d 666."

What is true of many constitutional rights is, *a fortiori*, true of a right which is less than constitutional. What is at issue on the present appeal is not *the waiver of the constitutional right to the effective assistance of counsel* but rather *the waiver of the statutory right to raise a contention in a post conviction petition.* There is no constitutional right to post conviction relief just as there is no constitutional right to take a direct appeal. Post conviction relief in this State is statutory, having been granted by the Maryland Legislature by Chapter 44 of the Acts of 1958 and subsequently amended. The act of the Legislature which creates the statutory relief may prescribe its own waiver standard. With respect to the right to raise an allegation of error in a post conviction petition, one cannot say that a waiver of this right "will not be presumed from a silent

record," when the very statute which created the right is most explicit with regard to a waiver thereof:

> "When an allegation of error could have been made by a petitioner . . . in a prior petition under this subtitle . . . there shall be a rebuttable presumption that said petitioner intelligently and knowingly failed to make such allegation."

This is, in terms, a presumption of waiver from mere silence.

If this were otherwise, the finality aimed at by the Uniform Post Conviction Petition Act would be a "lost cause." The failure to raise a contention in a first post conviction petition would never foreclose the raising of that contention in a subsequent petition unless, as a part of the first hearing, the petitioner explicitly articulated the possible contention and explicitly indicated that he was knowingly and voluntarily foregoing the raising of that contention.

We are not unmindful of *Jourdan v. State,* 275 Md. 495, 341 A. 2d 388, and *Wright v. State,* 33 Md. App. 68, 363 A. 2d 520, strenuously urged upon us by the appellant, but we find neither of those decisions to be controlling. In *Wright,* we were dealing squarely with the inability of the appellant there to prevail on direct appeal. Any speculation as to what his expectations of relief might be upon some later post conviction petition, which petition had never been taken and the merits of which were therefore not before the court, was gratuitous dictum made in passing and was not the law of the case. To the extent to which any intimation therein is inconsistent with our square holding today, we affirmatively disclaim such suggestion.

By the same token, what the appellant urges upon us from *Jourdan v. State* is simply dicta and not the law of that case. *Jourdan* dealt with a post conviction petitioner's claim of a deprivation of his constitutional right against double jeopardy. Initially in this Court, Chief Judge Orth (now Associate Judge of the Court of Appeals) held upon the merits that there had been a manifest necessity for a first

mistrial so as to obviate the double jeopardy claim. *State v. Jourdan,* 22 Md. App. 648, 325 A. 2d 164. In reversing that decision for the Court of Appeals, Judge Eldridge also dealt with the question of manifest necessity and with the double jeopardy issue upon the merits. In neither the opinion of the Court of Special Appeals nor of the Court of Appeals was it necessary to deal with the issue of the waiver of the constitutional claim by virtue of not having raised that claim upon the first available opportunity. That waiver was not the issue before the Court was made very explicit by Judge Eldridge, at 275 Md. 506:

> "In its appeal to the Court of Special Appeals, the State made no claim that Jourdan waived his double jeopardy contention because his attorney failed to raise the issue before or at the beginning of the second trial, and the Court of Special Appeals stated that 'we shall assume, but do not specifically so decide,' that the issue was not waived (22 Md. App. at 656). And in this Court the State does not contend that the double jeopardy question was waived."

By Chapter 442 of the Acts of 1965, the Post Conviction Procedure Act was amended, under what was then perceived to be the threat of *Fay v. Noia,* 372 U. S. 391, 83 S. Ct. 822, 9 L.Ed.2d 837 (1963), so as to adopt the definition of waiver of a constitutional right as set forth in *Johnson v. Zerbst,* 304 U. S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461 (1938). By explicitly imposing the adverbs "intelligently and knowingly" upon the failure to raise a point before trial, at trial, on direct appeal, or in an earlier post conviction petition before waiver would be deemed effective, the Maryland Legislature did adopt a substantive definition in line with *Johnson v. Zerbst* and *Fay v. Noia.* As was its prerogative, however, it allocated the burden of proof on the issue in a radically different fashion. It provided, in § 645A (c) that an "allegation of error shall be deemed to be waived" if a petitioner could have objected but intelligently and knowingly failed to object "unless the failure to make such

allegation shall be excused because of special circumstances." The Legislature then could not have been more clear in allocating the burden:

> "The burden of proving the existence of such special circumstances shall be upon the petitioner."

With respect, furthermore, to the adverbial modifiers "intelligently and knowingly," the Legislature went on to provide explicitly:

> ". . . there shall be a rebuttable presumption that said petitioner intelligently and knowingly failed to make such allegation."

There is no constitutional requirement, Federal or state, that there even be such a thing as post conviction relief, just as there is no constitutional requirement that there be a right to direct appeal. The Post Conviction Procedure Act is a creature of Maryland statute. When operating at the sub-constitutional level — either with statute law or with the common law — the General Assembly is supreme. They have made it clear that the failure to raise a claim even of constitutional error is presumptively a waiver of that claim. On this issue, a petitioner loses the tie. The Court of Appeals and this Court have long recognized the validity of the legislative command in this regard. *Washington v. Warden,* 243 Md. 316, 220 A. 2d 607; *Anglin v. Director,* 1 Md. App. 564, 232 A. 2d 532; *Erving v. Warden,* 4 Md. App. 716, 244 A. 2d 902; *Williams v. Director,* 4 Md. App. 721, 245 A. 2d 105.

We note, moreover, that the star of *Fay v. Noia,* by which the appellant guides his course, is most emphatically on the wane. After attaining its perihelion in the mid-1960's, it has been preceptively sinking now for half a decade. In *Davis v. United States,* 411 U. S. 233, 93 S. Ct. 1577, 36 L.Ed.2d 216 (1973), the Supreme Court was dealing with the Federal Post Conviction Procedure Relief Act. A petitioner there sought to raise the constitutional claim that he had been denied an impartial jury in terms of the jury's racial composition. The petitioner was denied relief on the grounds that his failure

to raise the contention prior to trial amounted to a waiver of the contention, unless he could show good cause why he should be afforded relief from the waiver. Before the Supreme Court, he urged a position very similar to that urged by the appellant here. The Court summarized his contention, at 411 U. S. 236:

"Accordingly, he urges that his collateral attack on his conviction may be precluded only after a hearing in which it is established that he 'deliberately bypassed' or 'understandingly and knowingly' waived his claim of unconstitutional grand jury composition. See *Fay v. Noia* . . . and *Johnson v. Zerbst* . . . ."

Notwithstanding the language of *Fay v. Noia* and *Johnson v. Zerbst*, the Supreme Court recognized that the Federal Post Conviction Procedure Relief Act was a statutory creation of the Congress and that with respect thereto, the legislative mandate was supreme. The Court pointed out that Rule 12(b)(2) of the Federal Rules of Criminal Procedure, adopted by the Congress, provided explicitly that the failure to present certain defenses or objections "constitutes a waiver thereof . . .". 411 U. S. at 236. In deferring to the legislative command and in applying that command to collateral review in Federal habeas proceedings, the Supreme Court said, at 411 U. S. 242:

"We think it inconceivable that Congress, having in the criminal proceeding foreclosed the raising of a claim such as this after the commencement of trial in the absence of a showing of 'cause' for relief from waiver, nonetheless intended to perversely negate the Rule's purpose by permitting an entirely different but much more liberal requirement of waiver in federal habeas proceedings. We believe that the necesssary effect of the congressional adoption of Rule 12(b)(2) is to provide that a claim once waived pursuant to that Rule may not later be resurrected, either in the criminal proceedings or in federal habeas, in the absence of the showing of

'cause' which that Rule requires. We therefore hold that the waiver standard expressed in Rule 12(b)(2) governs an untimely claim of grand jury discrimination, not only during the criminal proceeding, but also later on collateral review."

See also *Shotwell Mfg. Co. v. United States*, 371 U. S. 341, 83 S. Ct. 448, 9 L.Ed.2d 357 (1963).

In *Wainwright v. Sykes*, 433 U. S. 72, 97 S. Ct. 2497, 53 L.Ed.2d 594 (1977), the Supreme Court referred to its decision in *Davis v. United States, supra,* and explicitly recognized the right of the legislative branch to promulgate the applicable waiver standard, saying at 53 L.Ed.2d 606:

"We noted that *the rule* 'promulgated by this Court and, pursuant to 18 USC §3771 [18 USCS § 3771], *"adopted" by Congress, governs by its terms the manner in which the claims of defects in the institution of criminal proceedings may be waived,'* id., at 241, 36 L.Ed.2d 216, 93 S. Ct. 1577, and held that this standard contained in the rule, rather than the *Fay v. Noia* concept of waiver, should pertain in federal habeas as on direct review." (Emphasis supplied)

In *Francis v. Henderson*, 425 U. S. 536, 96 S. Ct. 1708, 48 L.Ed.2d 149 (1976), the Supreme Court deferred to the right of a state legislature to ordain its own waiver standards. Involved in that case was a Louisiana statute, described by the Supreme Court at 425 U. S. 537:

"The Louisiana law then in force clearly required that any objection by a defendant to the composition of the grand jury that had indicted him had to be made in advance of his trial. Otherwise, the law provided, 'all such objections shall be considered as waived and shall not afterwards be urged or heard.' "

The defendant in that case failed to make timely objection to the composition of the grand jury. He was found guilty

and sentenced to life imprisonment. He later sought collateral review in the Louisiana court, claiming that Negroes had been unconstitutionally excluded from the grand jury that had indicted him. "The court [the Louisiana court] held that Francis had waived this claim when he failed to raise it before trial as required by state law, and it accordingly denied relief." 425 U. S. at 538.

Over the anguished dissent of Justice Brennan, appealing to the "knowing and intelligent" waiver standard of *Johnson v. Zerbst* and *Fay v. Noia*, the Supreme Court deferred to the Louisiana Legislature, saying at 425 U. S. 540-541:

> "The Louisiana time limitation applicable in the present case was obviously designed to serve precisely these same important purposes, as the Court specifically recognized more than 20 years ago in a case involving this very Louisiana law, *Michel v. Louisiana*, 350 U. S. 91, 100 L.Ed. 83; 76 S. Ct. 158. There the Court said:
>
>> 'It is beyond question that under the Due Process Clause of the Fourteenth Amendment Louisiana may attach reasonable time limitations to the assertion of federal constitutional rights. . . .' "

Even more recently, in *Wainwright v. Sykes, supra*, the Supreme Court was dealing with the Florida "contemporaneous objection" rule and its foreclosing effect upon a state prisoner's claim that he had been denied his fifth Amendment right against compulsory self-incrimination. The petitioner prevailed in the United States District Court for the Middle District of Florida, where that court "held further that respondent had not lost his right to assert such a claim by failing to object at trial or on direct appeal." 53 L.Ed.2d at 601. The petitioner prevailed again at the United States Court of Appeals for the Fifth Circuit, 528 F. 2d 522 (1976), where that court, relying upon *Fay v. Noia*, "concluded that the failure to comply with the

rule requiring objection at the trial would only bar review of the suppression claim where the right to object was deliberately bypassed for reasons relating to trial tactics." 53 L.Ed.2d at 601.

The Supreme Court reversed. It deferred to the right of the Florida Legislature to establish a contemporaneous objection rule and, in so doing, it explicitly rejected the rigid waiver standard of *Johnson v. Zerbst* and *Fay v. Noia*:

> "To the extent that the dicta of *Fay v. Noia* may be thought to have laid down an all-inclusive rule rendering state timely objection rules ineffective to bar review of underlying federal claims in federal habeas proceedings — absent a 'knowing waiver' or a 'deliberate bypass' of the right to so object — its effect was limited by Francis, which applied a different rule and barred a habeas challenge to the makeup of a grand jury." 53 L.Ed.2d at 607.

> "It is the sweeping language of *Fay v. Noia, supra,* going far beyond the facts of the case eliciting it, which we today reject." 53 L.Ed.2d at 608.

This current attitude of the Supreme Court guides our decision here. The most damning criticism of our criminal justice system today is that there is no finality. Somewhere the process of seemingly interminable review must come to a halt. In this case, we declare the halt, here and now.

We hold that the issue of ineffective assistance of counsel was waived by the appellant's failure to raise it in his first Post Conviction Petition. The Motion to Dismiss the contention in the second Post Conviction Petition was properly granted.

*Judgment affirmed; costs to be paid by appellant.*