## OTTWAY LEON CURTIS, SR., *v.* STATE OF MARYLAND

[No. 353, September Term, 1967.]

*Decided July 2, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*George R. Hughes* for appellant.

*H. Edgar Lentz, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Joseph G. Saurwein, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The appellant, charged with murder, was found guilty of murder in the first degree by a jury in the Circuit Court for

Prince George's County and sentenced to imprisonment for the remainder of his natural life.

At a bench conference prior to the selection of the jury defense counsel stated an objection to a *voir dire* question requested by the State "whether or not anybody has conscientious scruples against capital punishment," for the reason that "it is a denial of equal protection of my client * * * He is entitled to have a jury not have anyone excluded from it from any particular belief whatsoever." The prosecutor explained that the normal procedure was for the court to ask the question "and follow it up with a subsequent question if in fact they say yes." The court indicated the inquiry in that event would be "if that would affect their fair evaluation of the case in arriving at a fair and impartial verdict." If the reply to that inquiry was in the affirmative "then he is not an impartial juror and we excuse him. If he says it wouldn't affect it we let him serve provided neither one of you strikes him." Defense counsel then said, "I would like to show my objection."

In selecting the jury it was first ascertained by the court that no member of the panel had prior knowledge of the case, knew the appellant or members of his family, had a preconceived opinion about the case or knew, "other than seeing them casually," the prosecutor and defense counsel. The transcript of the proceedings then reads:

> "Whereupon, twelve jurors were called into the jury box and the defendant advised of his right of peremptory challenge, after which each individual juror was called and asked to arise and examined individually on their *voir dire* by asking the following questions:
> > 'Have you formed or expressed an opinion as to the guilt or innocence of Ottway Leon Curtis, Sr., prisoner at the bar?
> > Do you have any conscientious scruples against capital punishment?'
> No affirmative answers by any of the jurors were received to the above questions, and as each juror was called counsel exercised their right to peremptory challenge until a full panel of twelve was selected * * *."

The record does not disclose how many peremptory challenges were made by the State and by the defense. The court asked whether the State and defense were satisfied with the jury as selected. The prosecutor replied, "The State is satisfied." Counsel for the appellant replied, "The defendant is satisfied." The jury was sworn.

On appeal from the judgment the only contention of the appellant is that he was "denied due process and equal protection of the laws by the Court's inquiry into the prospective jurors' beliefs regarding capital punishment."

At the time the jury was selected there was a statutory proscription against the disqualification of any person for service as a juror of this State by reason of his beliefs against capital punishment.[1] Prior to the effective date of the statute it was well settled in this State that a prospective juror who had conscientious scruples against capital punishment could be challenged for cause in a prosecution for a crime for which capital punishment may be imposed. *Culver v. State,* 1 Md. App. 406; 416-417; *Graef v. State,* 1 Md. App. 161, 169. As the purpose of the *voir dire* examination is to ascertain the existence of cause for disqualification and no other purpose, *Baker v. State,* 3 Md. App. 251, 254, inquiry to that end in a capital case was then proper. But when this cause for disqualification, established by judicial decision, was removed by legislative enactment, the ground for the inquiry was no longer existent. We think that the question here challenged was not proper as asked after the effective date of the statute. Had the question elicited the fact that a prospective juror entertained a belief against capital punishment he could not have been excluded for that reason. Nor could the information as to such belief properly be sought as the basis for a peremptory challenge. Questions not specifically directed to some reasonable cause for disqualification, and so, merely for peremptory challenge, should not be asked. *Handy v. State,* 101 Md. 39. "The rule is, then, that

---

1. Ch. 500, Acts of 1967, approved 21 April 1967, codified as § 8A, Art. 51, Md. Code (1968 Repl. Vol.). By § 2 of the Act it became effective 1 June 1967. The jury here was selected and trial commenced 12 September 1967. At the trial no reference was made to the statute by the court, State or defense.

questions, not directed to a specific reason for disqualification and exclusion by the court, may be refused in the court's discretion. The nature and extent of the examination are to be decided by the court in each case, in its discretion, and, on appeal the ruling will not be interfered with unless there has been a clear abuse of that discretion." *Whittemore v. State,* 151 Md. 309, 315. See *Day v. State,* 2 Md. App. 334. The question is, therefore, whether, in the facts and circumstances of the instant case, there was such an abuse of the discretion of the lower court in permitting the question so as to require reversal of the judgment.

We construe Art. 51, § 8A according to the ordinary and natural import of its language, there being no different meaning clearly indicated by the context. It provides, "Hereafter no person shall be disqualified for service as a juror of this State by reason of his beliefs against capital punishment." We find no imperative reason in the statute for enlarging or restricting its meaning.[2] *Height v. State,* 225 Md. 251, 257. In the instant case no prospective juror indicated that he had a belief against capital punishment and thus none was excluded for that reason, either for cause or by peremptory challenge. We find no violation of the statute.

The appellant urges, however, that the mere asking of the question, no matter what the result may have in fact been, violated his constitutional rights. He argues that *Schowgurow v. State,* 240 Md. 121, compels this conclusion. We do not agree. Under the Maryland Constitution the exclusion of non-believers from jury service is not only authorized but demanded. In *Schowgurow* the Court said, "The resulting danger of abuse, under the decisions of the Supreme Court, at the least, puts the burden upon the State to show that there was no exclusion or discrimination," at 131. It found there that the burden was not met. In so finding it noted, at 131, "When the system of

2. The State said in its brief, "The records of the Department of Legislative Reference do not contain any comments or testimony to assist in determining the legislative intent of this statute, the sponsor of this legislation does not have any official writing which expresses the legislative intent, and legislative debate was negligible."

jury selection on its face shows discrimination and exclusion, an actual showing of discrimination on the basis of comparative numbers of the excluded and non-excluded classes on the jury lists is unnecessary; it is the danger of abuse resulting from the method of selection which renders it unconstitutional." It was within this frame of reference that the Court then said, at 131, "Under the decision of the Supreme Court in *Torcaso* (*Torcaso v. Watkins*, 367 U. S. 488 [1961]), we are constrained to hold that the provisions of the Maryland Constitution requiring demonstration of belief in God as a qualification for service as a grand or petit juror are in violation of the Fourteenth Amendment, and that any requirement of an oath as to such belief, or inquiry of prospective jurors, oral or written, as to whether they believe in a Supreme Being, is unconstitutional." But the mere asking of a prospective juror whether he has any conscientious scruples against capital punishment does not establish a system of jury selection which, on its face, shows discrimination and exclusion so as to make the inquiry, standing alone, unconstitutional. And even if it is assumed that there was a resulting danger of abuse thereby, putting the burden upon the State to show that there was no exclusion or discrimination, it is clear from the record, as above stated, that there was no discrimination or exclusion here.

We find support in our holding that the mere asking of a prospective juror if he has any conscientious scruples against capital punishment is not unconstitutional in *Crawford v. Bounds*, 395 F. 2d 297 (4th Cir.), decided 11 April 1968, in which all seven judges on the *en banc* panel agreed that the petitioner was entitled to writ of *habeas corpus*, although six of them wrote opinions. The lead opinion concluded that the petitioner's "* * * constitutional rights were violated by the manner in which the jury to determine his criminal responsibility was selected, and particularly because the prosecutor was allowed successfully to challenge prospective jurors for cause who expressed sentiments against capital punishment and thus to disqualify a substantial segment of the panel, *without the additional determination being made that their objections to capital punishment would preclude them from rendering a fair verdict on the issue of guilt.*" (emphasis added). And it

was later said in the opinion that "* * * belief against capital punishment on the part of jurors who are vested with a dichotomy of functions—the determination of the issue of guilt, and, if guilt is found, the degree of punishment to be imposed —cannot be allowed to disqualify a substantial part of the venire when it is not established that the views of the persons so disqualified will preclude them from making a fair determination on the issue of guilt, aside from the issue of punishment. Such disqualification prevents the jury in its function of determining the issue of guilt from being fairly representative of the community, and thus violates equal protection of the laws." We think it clear that the holding of the court was predicated on the fact that the method of jury selection resulted in a systematic exclusion of jurors and not that the mere inquiry as to belief against capital punishment was a constitutional violation. It appears that had the inquiry been followed with further inquiry of a juror expressing such belief as to whether it would preclude him from making a fair determination on the issue of guilt, and had he not been excluded for cause on an expression that it would not, there would have been no constitutional denial. In the instant case the posing of the question did not result in a systematic exclusion of jurors. And from the remarks of the lower court, a juror who had conscientious scruples against capital punishment would then have been asked if such scruples would preclude him from making a fair determination in arriving at a fair and impartial verdict and if not, he would not have been struck for cause.

We find further support in *Bumper v. North Carolina*, 390 U. S. 986, decided 3 June 1968. The petitioner argued that his constitutional right to an impartial jury was violated in that capital case when the prosecution was permitted to challenge for cause all prospective jurors who stated that they were opposed to capital punishment or had conscientious scruples against imposing the death penalty. He asserted that a jury qualified under such standards must necessarily be biased with respect to a defendant's guilt and that he was denied his right under the Sixth and Fourteenth Amendments to trial by an impartial jury. The Supreme Court refused to accept the contention, stating that he adduced no evidence to support the

claim that a jury so selected was necessarily "prosecution prone" and that the materials referred to in his brief were no more substantial than those brought to the Court's attention in *Witherspoon v. Illinois,* 390 U. S. 986, decided the same day.[3] In the instant case the appellant adduced no evidence to support a claim that the jury which convicted him was "prosecution prone," or as he now urges, that he was faced by a "hanging jury" or that they were all "death qualified," or that they were other than impartial. The materials on the subject mentioned in his brief—"public opinion polls conducted by George Gallup and Elmo Roper as reported in the Washington Post" and an article by "Professor Ober * * * in 42 Texas Law Review 545" are less substantial than those brought to the Court's attention in *Witherspoon* and referred to in the brief in *Bumper.*

In view of § 8A of Art. 51 we think it the better practice for the court not to put or permit a question to prospective jurors as to their beliefs against capital punishment. But in the circumstances of the instant case we do not think that the mere asking of the question violated the constitutional rights of the appellant. We feel that the court did not abuse its discretion in the asking of the question so as to require reversal. We do not presume prejudice to the appellant therefrom and find none from the record.

*Judgment affirmed.*

---

3. In *Witherspoon* it was held that a death sentence cannot constitutionally be executed if imposed by a jury from which have been removed from cause those who, without more, are opposed to capital punishment or have conscientious scruples against imposing the death penalty. The issue there was a narrow one, not involving the right of the prosecution to challenge for cause those prospective jurors who state their reservations against capital punishment would prevent them from making an impartial decision as to the defendant's guilt. Nor did it involve the State's assertion of a right to exclude from the jury in a capital case those who say that they could never vote to impose the death penalty or that they would refuse even to consider its imposition in the case before them. The Court said that *Witherspoon* did not govern *Bumper* because in *Bumper* the jury recommended a sentence of life imprisonment.