OTTWAY LEON CURTIS, SR. *v.* STATE OF
MARYLAND

[No. 153, September Term, 1977.]

*Decided December 18, 1978.*

*Martha G. Villmoare, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis Bill Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

This case concerns the interpretation of a provision of the Maryland Post Conviction Procedure Act, Maryland Code (1957, 1976 Repl. Vol.), Art. 27, § 645A (c), relating to those circumstances under which one is deemed to have "waived" an issue.

I.

The petitioner, Ottway Leon Curtis, Sr., was convicted of first degree murder on September 14, 1967, in the Circuit Court for Prince George's County. Represented by his appointed trial counsel, Curtis took an appeal to the Court of Special Appeals. The only issue raised on that appeal was whether Curtis was "denied due process and equal protection of the laws by the court's inquiry into the prospective jurors' beliefs regarding capital punishment." Answering this question in the negative, the Court of Special Appeals affirmed the conviction, *Curtis v. State,* 4 Md. App. 499, 243 A. 2d 656 (1968). We subsequently denied a petition for a writ of certiorari, *Curtis v. State,* 252 Md. 730 (1969).

Thereafter, Curtis, represented by different counsel, filed his first petition for relief under the Post Conviction Procedure Act. This petition alleged that: (1) Curtis was denied due process and equal protection because of the admission at his trial of hearsay testimony by the State's witnesses; (2) Curtis's right to a jury trial was denied because a juror was inattentive; (3) his constitutional rights were violated by "the trial court's failure to allow and/or call three or more doctors to testify" as to his sanity; and (4) the trial court erred by disregarding testimony indicating that Curtis was intoxicated at the time of arrest. After a hearing on the merits, the circuit court denied relief on May 28, 1970. An application for leave to appeal was then denied by the Court of Special Appeals.

On March 29, 1976, Curtis instituted the present case by filing his second petition under the Post Conviction Procedure Act. This time Curtis was represented by a third attorney. In this petition he alleged for the first time that he had been deprived of his Sixth Amendment right to "the genuine and effective representation of counsel" at the trial, on direct appeal, and at the first post conviction proceeding. With respect to the trial, the allegation was based on the trial attorney's failure to request a jury instruction on alibi, failure to request an instruction that voluntary intoxication could reduce first degree murder to second degree murder, failure

of trial counsel to object to hearsay testimony of certain witnesses, and failure of counsel to request an instruction on the defense of "diminished capacity." The allegation that Curtis's second attorney was inadequate was grounded upon that attorney's failure at the first post conviction proceeding to raise the issue of previous counsel's ineffectiveness. Also in the petition, Curtis, relying on *Mullaney v. Wilbur,* 421 U. S. 684, 95 S. Ct. 1881, 44 L.Ed.2d 508 (1975), complained of the instruction directing the jury to presume second degree murder from the occurrence of an unlawful homicide and placing the burden on Curtis to reduce the crime to manslaughter.

The State moved to dismiss this second post conviction petition, maintaining that Curtis had waived these allegations for purposes of review under the Post Conviction Procedure Act, Art. 27, § 645A (c), by failing to raise the issues previously. For purposes of ruling on the motion to dismiss, the circuit court accepted as true the following proffered facts:

"1. ...

"2. ...

"3. The issue of ineffective assistance of counsel (trial counsel, counsel on direct appeal and counsel at petitioner's first post-conviction hearing) has never been raised by petitioner in any prior court case.

"4. Petitioner was never advised by trial counsel or by counsel appointed on his prior post-conviction case that petitioner should have raised the issue of ineffective assistance of counsel in his first post-conviction petition.

"5. Petitioner was never advised that trial counsel may have been ineffective for his failure to raise the defense of voluntary intoxication as reducing the crime from first degree to second degree murder; nor was petitioner ever advised that trial counsel may have been ineffective for his failure to raise the issue of "diminished responsibility" or for his failure

to raise on direct appeal the evidentiary issue dealing with the "double hearsay" testimony of Mary Wedge and Mildred Curtis.

"6. Petitioner is a layman with a seventh grade education and an I.Q. of 72 (borderline range of intelligence). Evidence had been introduced at petitioner's trial that petitioner was a chronic alcoholic who had suffered some brain damage as a result of extended drinking for nineteen (19) years. Petitioner was not aware that he should have raised the issue of ineffective assistance of counsel at his first post-conviction hearing.

"7. Petitioner relied entirely on · his court-appointed counsel at trial, on direct appeal . . . and in his first post-conviction case. Petitioner would have raised the issue of ineffective assistance of counsel in his prior post-conviction case had petitioner known that there was a possible issue of ineffective assistance of counsel."

The circuit court granted the State's motion to dismiss the petition. The court held that the matter of inadequacy of counsel had been waived because of Curtis's failure to raise it at the first post conviction proceeding. Relief was also denied with regard to the matter of the homicide instructions in light of *Mullaney v. Wilbur, supra,* the court holding that the error in the jury instruction was cured by the return of a first degree murder verdict.[1]

Curtis then filed an application for leave to appeal to the Court of Special Appeals, raising as the only matter the circuit court's holding that he had waived the inadequacy of counsel allegations. He argued that mere failure to raise the inadequacy of counsel allegations before did not constitute a waiver; instead, he insisted that these allegations could only be deemed to be waived if he himself "could have made, but intelligently and knowingly failed to make, such allegation[s]" [2] previously. Moreover, Curtis maintained that

---

1. *See* Dorsey v. State, 278 Md. 221, 362 A. 2d 642 (1976).
2. This is the language of the Post Conviction Procedure Act, Art. 27, § 645A (c).

the proffered facts, accepted by the circuit court for purpose of the motion to dismiss, established that there was no intelligent and knowing failure to make the allegations.[3]

The Court of Special Appeals granted the application for leave to appeal and affirmed, *Curtis v. State,* 37 Md. App. 459, 381 A. 2d 1166 (1977). The Court of Special Appeals held that the failure of the petitioner's attorney at the first post conviction proceeding to raise the matter of trial counsel's inadequacy resulted in a waiver.[4] In the view of the Court of Special Appeals, only if the representation by counsel at the first post conviction proceeding was constitutionally inadequate, or if there were "special circumstances," would the matter of trial counsel's inadequacy be considered. The Court of Special Appeals held that the representation by the attorney at the previous post conviction proceeding was not constitutionally inadequate and that the proffered facts did not amount to "special circumstances." Consequently, the Court of Special Appeals refused to consider the issue of trial counsel's inadequacy, deeming it waived because it was not raised at the first post conviction proceeding. Under the holding of the Court of Special Appeals, a waiver was found to exist even though, under the proffered facts accepted for purposes of the motion to dismiss, the defendant himself had not "intelligently and knowingly" failed to raise the question of trial counsel's alleged inadequate representation. The court flatly stated that such "intelligent and knowing" failure is not necessary, 37 Md. App. at 463.

Curtis then filed in this Court a petition for a writ of certiorari, arguing that the Court of Special Appeals had erroneously interpreted the post conviction procedure statute. Due to the importance of the question presented, we granted certiorari.

---

**3.** Curtis further argued that even in a case where there had been a "knowing and intelligent" failure to make the allegations, the proffered facts would constitute "special circumstances" within the meaning of Art. 27, § 645A (c), excusing such failure.

**4.** Trial counsel's failure to raise the matter of his own inadequacy at the trial itself or on direct appeal would not constitute a waiver under the decisions of the Court of Special Appeals. *See, e.g.,* State v. Merchant, 10 Md. App. 545, 550, 271 A. 2d 752 (1970); Sample v. Warden, 6 Md. App. 103, 107, 250 A. 2d 269 (1969).

## II.

The Maryland Post Conviction Procedure Act, Art. 27, § 645A, provides for and regulates the post conviction proceedings by certain persons who have been convicted of crimes. Subsection (c) of § 645A deals with "waiver" as follows:

"(c) *When allegation of error deemed to have been waiver.* — For the purposes of this subtitle, an allegation of error shall be deemed to be waived when a petitioner could have made, but intelligently and knowingly failed to make, such allegation before trial, at trial, on direct appeal (whether or not said petitioner actually took such an appeal), in any habeas corpus or coram nobis proceeding actually instituted by said petitioner, in a prior petition under this subtitle, or in any other proceeding actually instituted by said petitioner, unless the failure to make such allegation shall be excused because of special circumstances. The burden of proving the existence of such special circumstances shall be upon the petitioner.

"When an allegation of error could have been made by a petitioner before trial, at trial, on direct appeal (whether or not said petitioner actually took such an appeal), in any habeas corpus or coram nobis proceeding actually instituted by said petitioner, in a prior petition under this subtitle, or in any other proceeding actually instituted by said petitioner, but was not in fact so made, there shall be a rebuttable presumption that said petitioner intelligently and knowingly failed to make such allegation."

The State maintains, as the Court of Special Appeals held, that under the above language, the mere failure to raise an issue results in a presumption of waiver, and only a finding of "special circumstances" will rebut the presumption or alleviate the effect of the waiver. Moreover, the State argues that facts such as those proffered and accepted in this case, showing that petitioner did not "intelligently and knowingly"

fail to previously raise the question of inadequacy of trial counsel, do not constitute "special circumstances" rebutting the presumption.

This interpretation of § 645A (c) by the State and the Court of Special Appeals is manifestly erroneous. The first paragraph of subsection (c) declares that, for purposes of the Post Conviction Procedure Act, "an allegation of error shall be deemed to be waived when a petitioner could have made, but intelligently and knowingly failed to make, such allegation" in a prior proceeding. The test for "waiver" which the Legislature contemplated was clearly the "intelligent and knowing" failure to raise, not the failure of counsel or an unknowing petitioner to raise an issue. The first paragraph of subsection (c) goes on to provide that where there is a knowing and intelligent failure to raise an issue previously, the failure "shall be excused because of special circumstances," with the burden being upon petitioner to prove the existence of special circumstances. Thus, the matter of "special circumstances" only becomes pertinent where there is an intelligent and knowing failure of the petitioner to previously raise an issue. Where the record affirmatively shows that there was not an intelligent and knowing failure to raise, there is nothing to "excuse," and the presence or absence of "special circumstances" has no relevance.

The second paragraph of subsection (c) provides that where an allegation of error could have been made by a petitioner previously, "but was not in fact so made, there shall be a *rebuttable* presumption that said petitioner *intelligently and knowingly* failed to make such allegation." (Emphasis supplied.) The statute does not speak in terms of a conclusive presumption of waiver, absent special circumstances, as viewed by the State and the Court of Special Appeals. Rather, it is a presumption of an intelligent and knowing failure to have raised an issue, which failure can be rebutted by evidence or stipulated facts showing that petitioner did not "intelligently and knowingly" fail to raise the issue previously.

The interpretation adopted by the State and the Court of

Special Appeals virtually does away with the concept of "waiver" as an intelligent and knowing failure to raise an issue. Not only is this interpretation of § 645A (c) contrary to the statutory language, but it is inconsistent with the opinions of this Court recognizing that the standard of "waiver" for purposes of the Act is whether "the petitioner himself 'intelligently and knowingly' failed to raise the issue" or, stated another way, whether he was previously "aware of and understood the possible defense," *Jourdan v. State,* 275 Md. 495, 507, 341 A. 2d 388 (1975). *Accord, Washington v. Warden,* 243 Md. 316, 321, 220 A. 2d 607 (1966); *Bristow v. State,* 242 Md. 283, 219 A. 2d 33 (1966). *See also Wright v. State,* 33 Md. App. 68, 363 A. 2d 520 (1976).[5] In *Washington v. Warden, supra,* 243 Md. at 321-322, the Court held that *facts* showing a lack of comprehension by petitioner adequately rebutted the presumption of an intelligent and knowing waiver. Moreover, the *Washington* case makes it clear that under the statute, the concept of a rebuttable presumption that a failure to raise an issue was intelligent and knowing, and the concept of "special circumstances" excusing an intelligent and knowing waiver, are separate and distinct matters. *Id.* at 322.

In sum, with respect to those situations governed by the "waiver" standards of subsection (c), where the petitioner establishes that he did not in fact intelligently and knowingly fail to raise an issue previously, such issue cannot be deemed to have been waived. He need not, in addition, establish "special circumstances." It is only where the petitioner in fact intelligently and knowingly failed to raise an issue, or where he is unable to rebut the presumption of an intelligent and knowing failure, that he must show "special circumstances" in order to excuse his failure.

---

5. However, in other opinions the Court of Special Appeals has adopted the same interpretation of § 645A (c) as it did in the instant case, Archer v. Director, 1 Md. App. 18, 226 A. 2d 356 (1967); Dodson v. Warden, Md. House of Correction, 8 Md. App. 593, 261 A. 2d 195 (1970); Vanfield v. Warden, 8 Md. App. 558, 261 A. 2d 188 (1970).

## III.

On the other hand, the above holding is not necessarily dispositive of cases like the present one. The foregoing principles may not govern every situation where there has been a failure to raise a matter previously. The pertinent question concerns the very scope or applicability of § 645A (c) itself. In other words, did the General Assembly, by use of the term "waiver" in the Post Conviction Procedure Act, intend that the definition of "waiver" set forth in subsection (c) determine in all cases the right to raise for the first time any issue in a post conviction action, regardless of the nature of prior procedural defaults, tactical decisions of counsel, or omissions of counsel?

It has repeatedly been recognized that the word "waiver" itself is ambiguous, susceptible to numerous meanings depending upon the particular context in which it is used. Speaking for the Supreme Court in *Green v. United States,* 355 U. S. 184, 191, 78 S. Ct. 221, 2 L.Ed.2d 199 (1957), Mr. Justice Black stated: " 'Waiver' is a vague term used for a great variety of purposes, good and bad, in the law." The inherently ambiguous nature of the word "waiver" was again recognized by the Supreme Court in *Schneckloth v. Bustamonte,* 412 U. S. 218, 245, 235, 93 S. Ct. 2041, 36 L.Ed.2d 854 (1973): "[T]here is no universal standard that must be applied in every situation where a person foregoes a constitutional right." Commentators have also discussed the variable nature of the term. *See* Ralph S. Spritzer, *Criminal Waiver, Procedural Default and the Burger Court,* 126 Pa. L. Rev. 473, 475 (1978); George E. Dix, *Waiver in Criminal Procedure: A Brief for More Careful Analysis,* 55 Tex. L. Rev. 193, 194 (1977). In *United States v. Chichester,* 312 F. 2d 275, 281 (9th Cir. 1963), the United States Court of Appeals for the Ninth Circuit declared:

> "It has often been said that the term 'waiver' is a troublesome term in the law. 'It is a flexible word, with no definite, and rigid meaning in the law, and, since it may be used in many senses, it is often of equivocal significance. While the term has various

meanings dependent upon the context, it is, nevertheless, capable of taking on a very definite meaning from the context in which it appears, and each case must be decided on the facts peculiar to it. As applied to the facts of cases, it is often difficult to determine what cases fall within a given definition and what without; and any satisfactory discussion of the term must consider all of its applications.' "

*See also, e.g., Merchants Ind. Corp. v. Eggleston,* 37 N. J. 114, 179 A. 2d 505, 513 (1962); *Roberts v. Roberts,* 62 Wyo. 77, 162 P. 2d 117, 121 (1945).

In view of the ambiguity associated with the term "waiver," we do not feel compelled by the language of § 645A to apply the "intelligent and knowing" standard to all allegations made in post conviction actions. Any time a matter falls within the scope of § 645A (c), there is no doubt that the explicitly stated standard, "intelligent and knowing," is applicable. However, it must be determined what type of situations the Legislature intended to be encompassed by subsection (c).

In construing a statute, a court must consider the meaning and effect of statutory language in light of the objectives and purposes of the enactment. *State v. Fabritz,* 276 Md. 416, 422, 348 A. 2d 275 (1975), *cert. denied,* 425 U. S. 942, 96 S. Ct. 1680, 48 L.Ed.2d 185 (1976); *Height v. State,* 225 Md. 251, 257, 170 A. 2d 212 (1961); *Barnes v. State,* 186 Md. 287, 291, 47 A. 2d 50, *cert. denied,* 329 U. S. 754, 67 S. Ct. 95, 91 L. Ed. 650 (1946). We have previously observed in *Jourdan v. State, supra,* and *Bristow v. State, supra,* that the legislative purpose of the Post Conviction Procedure Act, as amended by Ch. 442 of the Acts of 1965, was to adopt the concept of "waiver" set forth by the Supreme Court in cases like *Johnson v. Zerbst,* 304 U. S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461, 146 A.L.R. 357 (1938), and *Fay v. Noia,* 372 U. S. 391, 439, 83 S. Ct. 822, 9 L.Ed.2d 837 (1963). Consequently, a review of the Supreme Court's decisions in this regard would be instructive in ascertaining the legislative intent.

*Johnson v. Zerbst, supra,* is generally regarded as the cornerstone regarding waiver of certain basic constitutional

rights. In that case, the defendant was tried and convicted without the assistance of counsel on charges of uttering and possession of counterfeit money. In discussing whether there had been a waiver of the Sixth Amendment right to counsel, the Court said (304 U. S. at 464, emphasis supplied):

> "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily *an intelligent relinquishment or abandonment of a known right* or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

The strictness of the *Johnson v. Zerbst* standard was underscored by the Court in *Carnley v. Cochran,* 369 U. S. 506, 516, 82 S. Ct. 884, 8 L.Ed.2d 70 (1962), where it was declared: "Presuming waiver [of the right to counsel] from a silent record is impermissible."

This high standard has been applied regarding the waiver of the right to trial by jury. In *Adams v. United States,* 317 U. S. 269, 63 S. Ct. 236, 87 L. Ed. 268 (1942), the Supreme Court stated (317 U. S. at 275):

> "The short of the matter is that an accused, in the exercise of a free and intelligent choice, . . . may waive trial by jury . . . ."

Due to the conclusive nature of a guilty plea, the Court in *Machibroda v. United States,* 368 U. S. 487, 493, 82 S. Ct. 510, 513, 7 L.Ed.2d 473 (1962), said:

> " 'Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.' "

*Emspak v. United States,* 349 U. S. 190, 75 S. Ct. 687, 99 L. Ed. 997 (1955), concerned the waiver of the Fifth Amendment self-incrimination privilege in the context of a congressional hearing. Where there was doubt as to whether a response of the witness amounted to a claim of privilege, the Court held that it would not lightly infer the waiver of constitutional rights and that the governing standard is whether "the witness intelligently and unequivocally waives any objection based on the Self Incrimination Clause . . . ." 349 U. S. at 195. In 1957 the Supreme Court in *Green v. United States, supra,* 355 U. S. at 191, applied the "knowing and intelligent" standard in circumstances involving the waiver of a defendant's rights under the double jeopardy clause.

*Fay v. Noia, supra,* is, of course, a leading case setting forth the most restrictive concept of waiver. There, the defendant failed to appeal a murder conviction even though it was undisputed that a coerced confession was used against him at trial. Disagreeing with the trial court's finding of waiver, the Supreme Court said (372 U. S. at 439):

> "The classic definition of waiver enunciated in *Johnson v. Zerbst,* 304 U. S. 458, 464 — 'an intentional relinquishment or abandonment of a known right or privilege' — furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits — though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. Cf. *Price v. Johnston,* 334 U. S. 266, 291. At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner."

On the other hand, the Supreme Court has made it abundantly clear that the concept of "waiver" set forth in *Fay v. Noia, supra,* and *Johnson v. Zerbst, supra,* has no application in a variety of situations where a criminal defendant is deemed bound by prior action or inaction.

In *Schneckloth v. Bustamonte, supra,* it was held that where a defendant voluntarily consents to a search, he thereby foregoes any Fourth Amendment rights despite the absence of a *Johnson v. Zerbst* type of waiver. Although knowledge of the right to refuse consent was said to be a factor in determining whether the defendant's rights were violated, it was deemed not to be dispositive (412 U. S. at 241):

> "Nothing, either in the purposes behind requiring a 'knowing' and 'intelligent' waiver of trial rights, or in the practical application of such a requirement suggests that it ought to be extended to the constitutional guarantee against unreasonable searches and seizures."

*Estelle v. Williams,* 425 U. S. 501, 96 S. Ct. 1691, 48 L.Ed.2d 126 (1976), considered the right of a criminal defendant not to be tried in jail clothes. The Court found that although a defendant has a constitutional right not to be tried in such attire, only by affirmatively asserting this right will it be given effect. Finding that the question was essentially in the nature of trial tactics, and did not involve the test of waiver under *Johnson v. Zerbst,* the Court commented (425 U. S. at 512):

> "Nor can the trial judge be faulted for not asking the respondent or his counsel whether he was deliberately going to trial in jail clothes. To impose this requirement suggests that the trial judge operates under the same burden here as he would in the situation in *Johnson v. Zerbst,* 304 U. S. 458 (1938), where the issue concerned whether the accused willingly stood trial without the benefit of counsel. Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which

must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system."

The principle that a defendant is often bound by certain tactical decisions of his lawyer was also relied upon by the Court in *United States v. Nobles,* 422 U. S. 225, 95 S. Ct. 2160, 45 L.Ed.2d 141 (1975). The Court there held that the defendant, after his attorney had chosen to call his own investigator as a witness, was not entitled to the protections of the work product doctrine with respect to matters covered by the investigator's testimony.

The principle that a criminal defendant may be precluded from raising an issue despite the absence of a "waiver" in the *Johnson v. Zerbst* sense, extends beyond the area of attorney's trial tactics. Thus, in *Davis v. United States,* 411 U. S. 233, 93 S. Ct. 1577, 36 L.Ed.2d 216 (1973), a federal prisoner sought post conviction relief under 28 U.S.C. § 2255, asserting that the racial composition of the grand jury which indicted him was unconstitutionally discriminatory. The trial court found that under Rule 12(b)(2) of the Federal Rules of Criminal Procedure the defendant had waived the issue since he did not raise it before trial. Under the rule, the defendant's failure to timely raise the issue could be excused only if he showed "cause." In the Supreme Court the defendant argued that the "knowing and intelligent" standard of *Fay v. Noia* and *Johnson v. Zerbst* was controlling. The Supreme Court unequivocally rejected this position, agreeing with the trial court that the defendant was bound by the procedural requirements of the rule.

The Court in *Francis v. Henderson,* 425 U. S. 536, 96 S. Ct. 1708, 48 L.Ed.2d 149 (1976), was faced with a similar attack on the grand jury's racial composition in the context of a state proceeding. The issue before the Court was whether the failure of a state prisoner to note a timely objection to the composition of the grand jury which indicted him would bar him from federal habeas corpus relief. The Court noted that " '[t]here is no reason to . . . give greater preclusive effect to procedural defaults by federal defendants than to similar

defaults by state defendants.' " 425 U. S. at 542, quoting *Kaufman v. United States*, 394 U. S. 217, 228, 89 S. Ct. 1068, 22 L.Ed.2d 227 (1969). Rejecting the argument that the "knowing and intelligent" standard set forth in *Johnson v. Zerbst* and *Fay v. Noia* be applied, the Court held that in the normal case, unless the defendant shows "cause" and "actual prejudice" for failing to comply with a legitimate state procedural requirement, the procedural default should be upheld. Consequently, it is clear that a "procedural default" in certain circumstances, even where a defendant may personally have been without knowledge or understanding of the matter, may result in his being precluded from asserting important rights.

In many other circumstances it has been held that a criminal defendant may have been precluded from asserting a constitutional right because of prior action or inaction, despite the absence of a "waiver" within the meaning of *Johnson v. Zerbst* and *Fay v. Noia. See, e.g., Wainwright v. Sykes*, 433 U. S. 72, 97 S. Ct. 2497, 53 L.Ed.2d 594 (1977); *United States v. Washington*, 431 U. S. 181, 97 S. Ct. 1814, 52 L.Ed.2d 238 (1977); *Oregon v. Mathiason*, 429 U. S. 492, 97 S. Ct. 711, 50 L.Ed.2d 714 (1977); *Beckwith v. United States*, 425 U. S. 341, 96 S. Ct. 1612, 48 L.Ed.2d 1 (1976); *Garner v. United States*, 424 U. S. 648, 96 S. Ct. 1178, 47 L.Ed.2d 370 (1976). *See also Covington v. State*, 282 Md. 540, 553, 386 A. 2d 336 (1978) (dissenting opinion).

It is clear from the above discussed cases that whether one is precluded from asserting a constitutional right because of what may have occurred previously, even though the failure was not "intelligent and knowing," depends upon the nature of the right and the surrounding circumstances. A defendant may forego a broad spectrum of rights which are deemed to fall within the category of tactical decisions by counsel or involve procedural defaults.

In the broadest sense of the word, any tactical decision by counsel, inaction by counsel, or procedural default, could be described as a "waiver." For example, an attorney must make numerous decisions in the course of a trial. Whenever he makes one, choosing to take or forego a particular action, the

alternate choice could be said to have been waived. However, with regard to constitutional rights in a criminal proceeding, in a much narrower sense the term "waiver" could be said to connote the intelligent and knowing relinquishment of certain basic constitutional rights under circumstances where the courts have held that only such intelligent and knowing action will bind the defendant. In our view, the Legislature was using the word "waiver" in this narrow sense in the Maryland Post Conviction Procedure Act, Art. 27, § 645A. It intended that the waiver provision of that Act, with its express definition of waiver, be applicable only in those situations where the courts have required an "intelligent and knowing" standard. This, we believe, is shown by the statutory background, the decisions of this Court, and logic.

The Legislature adopted the waiver provision of the Post Conviction Procedure Act, subsection (c), in 1965 as an amendment to the original post conviction statute, Ch. 442 of the Acts of 1965.[6] The amendment was prompted by the Supreme Court's opinion in *Fay v. Noia.* As stated earlier, this Court has pointed out that the General Assembly intended to adopt the concept of "waiver" of constitutional rights set forth in the Supreme Court cases on the subject. *Jourdan v. State, supra,* 275 Md. at 507; *Bristow v. State, supra,* 242 Md. at 289. Moreover, nothing in the statute suggests an intent to change the law as to what constitutes "waiver." Rather, as explained by Chief Judge Murphy for the Court of Special Appeals in *Jones v. Warden,* 2 Md. App. 343, 349, 234 A. 2d 472 (1967), the adoption of subsection (c) was "for the procedural purpose of creating a rebuttable presumption that such a waiver has in fact occurred where the alleged error has not been timely asserted."

In *Bristow v. State, supra,* 242 Md. at 289-290, decided shortly after the Post Conviction Procedure Act was

---

6. Although Maryland adopted the Uniform Post Conviction Act in 1958, the 1966 amended uniform provision setting forth a standard for waiver was not adopted by this State. *See* Handbook of the National Conference of Commissioners on Uniform State Laws, 1966, *Revised Uniform Post-Conviction Procedure Act,* pp. 266, 276. Since our subsection (c), adopted a year earlier, is appreciably different from the Uniform Act, decisions in other states under that Act offer no guidance in construing our waiver provision.

amended, this Court, although pointing out that subsection (c) reflected the definition of waiver set forth in *Fay v. Noia,* explicitly acknowledged that the "intelligent and knowing" standard of subsection (c) is not always applicable. There, the Court took note that certain tactical matters may be waived without meeting this high standard. Relying on *Henry v. Mississippi,* 379 U. S. 443, 85 S. Ct. 564, 13 L.Ed.2d 408 (1965), the Court declared (*id.* at 290): "there are situations in which a defendant may be bound by the reasoned tactical actions of his counsel taken without that defendant's express consent and participation."

If, in defining "waiver" for purposes of the Post Conviction Procedure Act, the General Assembly intended to make subsection (c), with its "intelligent and knowing" definition, applicable every time counsel made a tactical decision or a procedural default occurred, the result could be chaotic. For example, under such an interpretation of the statute, for a criminal defendant to be bound by his lawyer's actions, the lawyer would have to interrupt a trial repeatedly and go through countless litanies with his client. One of the basic principles of statutory construction is that a statute should not be construed to lead to an unreasonable or illogical result. *Grosvenor v. Supervisor of Assess.,* 271 Md. 232, 242, 315 A. 2d 758 (1974); *Coerper v. Comptroller,* 265 Md. 3, 6, 288 A. 2d 187 (1972); *Pan Am. Sulphur Co. v. State Dep't of Assessments and Taxation,* 251 Md. 620, 627, 248 A. 2d 354 (1968); *Sanza v. Maryland Board of Censors,* 245 Md. 319, 340, 226 A. 2d 317 (1967). It is hardly conceivable that the Legislature, in adopting § 645A (c), could have intended to use the word "waiver" in its broadest sense, thereby requiring that the "intelligent and knowing" standard apply every time an issue was not raised before.

Consequently, we believe that the Legislature, when it spoke of "waiver" in subsection (c) of Art. 27, § 645A, was using the term in a narrow sense. It intended that subsection (c), with its "intelligent and knowing" standard, be applicable only in those circumstances where the waiver concept of *Johnson v. Zerbst* and *Fay v. Noia* was applicable. Other situations are beyond the scope of subsection (c), to be

governed by case law or any pertinent statutes or rules. Tactical decisions, when made by an authorized competent attorney, as well as legitimate procedural requirements, will normally bind a criminal defendant.[7]

## IV.

Turning to the instant case, the petitioner Curtis's allegations are that the representation by his trial counsel was so inadequate that he was deprived of his Sixth Amendment right "to have the Assistance of Counsel for his defense." It is settled that a criminal defendant cannot be precluded from having this issue considered because of his mere failure to raise the issue previously. The question of the constitutional adequacy of trial counsel's representation is governed by the *Johnson v. Zerbst* standard of an "intelligent and knowing" waiver. *Hawk v. Olson,* 326 U. S. 271, 274, 279, 66 S. Ct. 116, 90 L. Ed. 61 (1945); *Glasser v. United States,* 315 U. S. 60, 70-72, 62 S. Ct. 457, 86 L. Ed. 680 (1942); *United States v. Garcia,* 517 F. 2d 272 (5th Cir. 1975); *Kelly v. Peyton,* 420 F. 2d 912, 914 (4th Cir. 1969); *Sawyer v. Brough,* 358 F. 2d 70, 73-74 (4th Cir. 1966). Consequently, subsection (c) of the Post Conviction Procedure Act is applicable to Curtis's contention, and it can only be deemed "waived" for purposes

---

7. Our holding that § 645A (c) incorporates the current Supreme Court standard of waiver is not unlike the interpretation we have given to other statutes enacted in response to Supreme Court decisions. The definition of the word "obscene," as used in the movie censorship statute, Code (1957, 1970 Repl. Vol.), Art. 66A, § 6, has been construed to reflect the meaning of the term as delineated in the most recent Supreme Court opinions. *See* Mangum v. Maryland State Bd. of Censors, 273 Md. 176, 192, 328 A. 2d 283 (1974); Hewitt v. Maryland State Bd. of Censors, 256 Md. 358, 260 A. 2d 319 (1970); Wagonheim v. Maryland State Bd. of Censors, 255 Md. 297, 258 A. 2d 240 (1969), *aff'd sub nom* Grove Press, Inc. v. Maryland State Bd. of Censors, 401 U. S. 480, 91 S. Ct. 966, 28 L.Ed.2d 205 (1971); Hewitt v. Maryland State Bd. of Censors, 254 Md. 179, 254 A. 2d 203 (1969); Hewitt v. Bd. of Censors, 243 Md. 574, 221 A. 2d 894 (1966); Leighton v. Maryland State Bd. of Censors, 242 Md. 705, 218 A. 2d 179 (1966). Similarly, we have repeatedly declared that the purpose of the Maryland long arm statute, Code (1974), § 6-103 of the Courts and Judicial Proceedings Article, was to extend the scope of jurisdiction over non-resident defendants to the limits of the Fourteenth Amendment's Due Process Clause as declared by the Supreme Court. *See* Mohamed v. Michael, 279 Md. 653, 370 A. 2d 551 (1977); Geelhoed v. Jensen, 277 Md. 220, 352 A. 2d 818 (1976); Lamprecht v. Piper Aircraft Corp., 262 Md. 126, 277 A. 2d 272 (1971); Van Wagenberg v. Van Wagenberg, 241 Md. 154, 215 A. 2d 812, *cert. denied,* 385 U. S. 833, 87 S. Ct. 73, 17 L.Ed.2d 68 (1966).

of the Post Conviction Act if Curtis "intelligently and knowingly" failed to raise it previously. The proffered facts, accepted as true by the circuit court for purposes of the State's motion to dismiss on the ground of waiver, clearly disclose that Curtis did not "intelligently and knowingly" fail to previously raise the matter of his trial counsel's alleged inadequacy. Therefore, the issue cannot be deemed to have been waived.

The Court of Special Appeals did not reach the issue of the inadequacy of representation by Curtis's trial counsel because of its holding that the question had been waived. We shall therefore remand this case so that the Court of Special Appeals can consider whether the petitioner's allegations, coupled with the record of trial, made out a sufficient case of inadequacy of trial counsel so as to entitle him to a hearing on the present post conviction petition.

> *Judgment of the Court of Special Appeals reversed and case remanded to the Court of Special Appeals for proceedings not inconsistent with this opinion.*
> *Costs to be paid by Prince George's County.*