MICHAEL, Circuit Judge,
concurring:
I concur in the judgment and in all but part II.A. of the majority opinion. As for part H.A., I agree that Oken has proeedurally defaulted the claim he asserts under Morgan v. Illinois, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992), though I come to that conclusion by a different course than does the majority. If we could reach the merits of the Morgan claim, I would vote to grant the writ so as to allow Oken a new sentencing proceeding.
I.
Oken’s trial counsel objected to the trial court’s voir dire and requested additional questions aimed at identifying jurors who would impose the death penalty regardless of mitigating evidence. The trial court overruled the objection and refused to ask the questions tendered by Oken’s counsel. On direct appeal Oken was represented by a different lawyer. That lawyer failed to appeal the voir dire issue, believing that the questions actually asked satisfied the requirements of Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). After oral argument on Oken’s direct appeal, but before the Maryland Court of Appeals rendered its decision, the United States Supreme Court decided Morgan. In Morgan the Court held that a capital defendant, upon his request, must *272 be allowed to ask “reverse Witherspoon”[1] questions on voir dire in order to determine whether particular jurors would always vote to impose death following a capital conviction. See 504 U.S. at 736, 112 S.Ct. 2222. Although Oken’s appellate counsel read Morgan when it was decided, she did not “associate[ ] Morgan with the Oken case.” As a result, she did not seek leave to file a supplemental brief on the voir dire issue.
After the Maryland Court of Appeals affirmed his conviction and sentence and the United States Supreme Court denied his petition for certiorari, Oken filed a state habeas petition in Maryland circuit court. There Oken argued (1) that the trial court had violated Morgan in failing to ask “reverse Witherspoon” questions on voir dire and (2) that appellate counsel had been ineffective in failing to raise the issue. Although the state contended that Oken had waived his Morgan claim by not raising it on direct appeal, the state habeas court proceeded directly to the merits, holding that the trial court’s follow-up questions satisfied Morgan. The state ha-beas court then went on to hold that Oken’s appellate counsel had not been constitutionally ineffective in failing to raise the Morgan claim on direct appeal.
Oken petitioned the Maryland Court of Appeals for leave to appeal the decision of the state habeas court. In his petition he argued the merits of his Morgan claim and argued that his appellate counsel on direct appeal had been ineffective in failing to raise that claim. The Court of Appeals granted leave to appeal all issues raised in the petition. In his opening brief in the habeas appeal, Oken argued the merits of his Morgan claim, but mentioned the ineffectiveness of appellate counsel issue only in a footnote. In the footnote Oken asserted that the Court of Appeals had granted the relief sought on his ineffective assistance claim when it granted him leave to appeal the merits of the state habeas court’s decision on the Morgan issue. The ineffective assistance of appellate counsel claim was therefore moot, according to Oken. The state argued in its response that Oken’s counsel on direct appeal had waived the Morgan claim and that Oken had now abandoned his claim of ineffective assistance of appellate counsel. In his reply brief Oken denied any intent to abandon his ineffective assistance claim, but offered no argument in support of that claim. As to waiver, Oken contended (1) that the Morgan claim had not been knowingly and intelligently waived, and thus was not waived under Maryland law; (2) that Maryland’s “special circumstances” exception to waiver applied because the Supreme Court’s Morgan decision came down after oral argument on his direct appeal; and (3) that Morgan was a new rule decided while his case was still on direct appeal, so he should be permitted to raise it on collateral review.
The Court of Appeals (on habeas) rejected Oken’s argument that his ineffective assistance of appellate counsel claim was moot and held, without discussion, that he had abandoned that claim. See Oken II, 681 A.2d at 36 n. 5. The Morgan claim thus was presented solely as a trial court error, and the Court of Appeals proceeded to the question whether Oken had waived that claim of error by failing to raise it on direct appeal. With one judge dissenting, the Court of Appeals concluded that the Morgan issue had been waived on direct appeal. The court held that Maryland’s “knowing and intelligent” requirement for waiver applied only in the same circumstances as the “knowing and intelligent” standard of Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and Fay v. Noia, 372 U.S. 391, 83 S.Ct. *273 822, 9 L.Ed.2d 837 (1963), see Curtis v. State, 284 Md. 132, 395 A.2d 464 (1978), and that Morgan did not create rights that were subject to the Johnson/Fay standard. The special circumstances exception did not apply, according to the Court of Appeals, because the principle announced by Morgan was already clearly established by the Supreme Court in Ross v. Oklahoma, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), and by Maryland in Bowie v. State, 324 Md. 1, 595 A.2d 448, 457-59 (1991), and Hunt v. State, 321 Md. 387, 583 A.2d 218, 231-34 (1990). See Oken II, 681 A.2d at 38. For the same reason, the Court of Appeals rejected Oken’s argument that he was entitled to the benefit of Morgan as a new rule.
The Court of Appeals then proceeded to the merits of the Morgan claim and held that “[although better questions could have been asked,” the voir dire conducted by the trial court was adequate to “life qualify” the jury. See Oken v. State, 343 Md. 256, 681 A.2d 30, 40 (1996) (Oken II). One judge dissented. See id. at 53-59 (Bell, J., dissenting).
II.
To repeat, the Maryland Court of Appeals found that the Morgan issue had been waived on direct appeal. I agree with the majority .that the Maryland court’s grounds for finding waiver were independent of federal law and were constitutionally adequate. Oken’s Morgan claim therefore is procedurally defaulted. I also agree that the only cause for Oken’s procedural default was the ineffectiveness of his appellate counsel and that he procedurally defaulted that claim when he failed to raise it before the Maryland Court of Appeals on appeal from the state habeas court. However, I do not agreé that Oken was required under Maryland law to raise his ineffective assistance claim in his opening brief on appeal from the state habeas court. Had Oken actually argued ineffective assistance of appellate counsel in his reply brief, he would have preserved his Morgan claim.
The state had argued waiver before the state habeas court and lost because that court first decided the Morgan claim on the merits and then rejected Oken’s claim of ineffective assistance of appellate counsel. See Oken II, 681 A.2d at 36 (“The State contended before [the state habeas court] and before this Court, that because Oken did not raise this claim on direct appeal, it is waived.”); id. at 54 (Bell, J., dissenting) (recognizing that the state ha-beas court had “found, if only implicitly, sufficient ‘special circumstances’ to excuse the appellant’s failure to raise the Morgan issue on direct appeal”). Thus, when Oken filed his opening brief with the Maryland Court of Appeals on habeas, he was entitled to rely on the state habeas court’s implicit holding that his. substantive Morgan claim was preserved. In other words, since the state habeas court had not found the claim defaulted, Oken had no reason to argue cause for default in his opening brief on appeal.
The state, however, did argue default in its response brief. At that point, Oken was both entitled and obligated to contest the allegation of default, either by challenging waiver itself or by offering some cause supported by the record, such as ineffective assistance of appellate counsel. See Federal Land Bank of Baltimore, Inc. v. Esham, 43 Md.App. 446, 406 A.2d 928, 936 (1979) (“The function of a reply brief is limited. The appellant has the opportunity and duty to use the opening salvo of his original brief to state and argue clearly each point of his appeal. We think that the reply brief must be limited to responding to the points and issues raised in the appellee’s brief.”); id. at 937 (“Due process requires that all parties have an opportunity to reply to new issues asserted against them .... ”); id. (“The reply brief must do what it purports to do: it must respond to the points raised in the appellee’s brief which, in turn, are addressed to the issues originally raised by the appel *274 lant.”). Oken did contest the state’s waiver argument for the first time in his reply brief, and the Maryland Court of Appeals considered his arguments on that point without finding them abandoned. See Oken II, 681 A.2d at 36. Oken did not, however, make any argument that his appellate counsel had been ineffective. Thus, he abandoned his ineffective assistance of appellate counsel claim not because he raised it for the first time in his reply brief, but because he failed to raise it even then.[2]
III.
Oken raised the Morgan issue at trial, in the state habeas court, in his petition for leave to appeal the decision of the state habeas court, and in his opening brief, reply brief, and oral argument before the Maryland Court of Appeals on habeas. The trial court, the habeas court, and the Maryland Court of Appeals each considered the Morgan claim on the merits. Nonetheless, the claim is proeedurally defaulted because his appellate counsel failed to raise it on direct appeal. And because the cause for that default was abandoned when Oken’s habeas counsel mistook the Court of Appeals’ grant of review for a grant of relief, the rule of procedural default precludes all federal review of Oken’s Morgan claim. The majority’s treatment of the merits of the Morgan claim therefore is dictum, but it is dictum that I cannot join. I believe that the voir dire conducted in this case was insufficient to identify jurors who would automatically impose the death penalty upon conviction,
A capital defendant has the right to challenge for cause any juror who “would unwaveringly impose death after a finding of guilt.” Morgan, 504 U.S. at 733, 112 S.Ct. 2222. See also Yeatts v. Angelone, 166 F.3d 255, 265 (4th Cir.1999); Mackall v. Angelone, 131 F.3d 442, 450-51 (4th Cir.1997). In order for the defendant to exercise that right effectively, the voir dire must include questions that “are enough to detect those in the venire who automatically would vote for the death penalty.” Morgan, 504 U.S. at 734, 112 S.Ct. 2222. “[G]eneral fairness and ‘follow the law’ questions” are not enough. Id. See also id. at 735, 112 S.Ct. 2222 (“As to general questions of fairness and impartiality, [jurors with dogmatic views on the death penalty] could in all truth and candor respond affirmatively, personally confident that such dogmatic views are fair and impartial.”).
The second, third, and fourth voir dire questions are unquestionably “general fairness and ‘follow the law' questions.” See ante at 266 (listing questions). More importantly, they do not focus on the essential inquiry mandated by Morgan: the jurors’ ability to give due consideration to mitigating evidence at sentencing. The majority concludes, however, that the first voir dire question, “Do you have any strong feelings, one way or the other, with regard to the death penalty?” was sufficient to root out any unconstitutional bias toward death. I disagree. As Oken has argued, the trial court’s voir dire questions failed to identify venire members who would automatically impose the death penalty for particular crimes, such as a murder-rape. Prospective jurors might be able to answer “in all truth and candor” that they do not have strong views on the death penalty, yet at the same time believe that death invariably should be imposed when the murder is committed in the course of a sex offense.[3] Such jurors will *275 vote to impose a sentence based solely on the proof of the offense itself. “But such jurors obviously deem mitigating evidence to be irrelevant to their decision to impose the death penalty: They not only refuse to give such evidence any weight but are also plainly saying that mitigating evidence is not worth their consideration and that they will not consider it.” Id. at 736, 112 S.Ct. 2222. The Morgan court was unequivocal. A juror who would “automatically vote for the death penalty without regard to the mitigating evidence is announcing an intention not to follow the instructions to consider the mitigating evidence.” Id. at 738, 112 S.Ct. 2222. Such a juror is not just merciless, he is “lawless.” Id.
The question suggested by Oken and rejected by the trial court was directed precisely toward identifying “lawless” jurors who would not consider mitigating evidence: “Are there any murders or any type of murders where no matter what excuses or explanations are offered, you would feel that the person responsible should get the death penalty? What are they?” JA 28. Compare Morgan, 504 U.S. at 723, 112 S.Ct. 2222 (trial court committed reversible error in refusing to ask proposed voir dire question: “If you found Derrick Morgan guilty, would you automatically vote to impose the death penalty no matter what the facts are?”).
The trial court’s first question, in contrast, was a vague, unfocused query about the venire members’ “feelings” about the death penalty. The inherent ambiguity' of that question was only worsened by the trial court’s failure to explain to the prospective jurors that they would be required to consider mitigating and aggravating evidence at sentencing. Indeed, many of the venire. members were unaware that the trial would be bifurcated into separate guilt and penalty phases. See, e.g., JA 329-30. The obligation to consider mitigating evidence was never mentioned during voir dire. But “[m]embers of the venire cannot be expected to divine what attitudes and animosities the court and the parties want to know about.... ’ If voir dire is to yield helpful information, the questions themselves must be framed so as to elicit concrete, candid responses.” United States v. Torres, 191 F.3d 799, 813 (7th Cir.1999) (Rovner, J., concurring). Stripped of any context, the trial court’s unfocused inquiry into venire members’ feelings about the death penalty could not reliably identify jurors whose bias in favor of the death penalty prevented them from considering mitigating evidence as required by the law.
A review of the voir dire reveals as much. In response to the question, “Do you have any strong feelings, one way or the other, regarding the death penalty,” many venire members gave the same ambiguous response: “Not really?’ See, e.g., JA 293, 304, 307, 330, 356, 385, 386, 388. When venire members responded with an unqualified '“Yes,” or even with expressions of support for the death penalty, the trial court frequently did no more than continue with its three “follow the law” questions, none of which concerned sentencing. Thus, venire persons who admitted strong feelings about the death penalty, see JA 357, 375-76, 395-96, 406, “favor[ed] the death penalty,” JA 299, believed “it should be enforced,” JA 382, or were “for it,” JA 389-90, were asked no questions about how those feelings would affect their ability to consider mitigating evidence at sentencing. Given the number of ambiguous responses and the identical treatment of yes and no answers, it is difficult to believe that the voir dire conducted here served the purpose required by Morgan, that is, identifying ju *276 rors whose strong feelings about the death penalty would prevent them from sentencing in accordance with the law.
Because neither the voir dire questions themselves nor the context in which they were asked directed' the venire members’ attention to their obligation to consider mitigating evidence, this case has only a superficial similarity to United States v. Tipton, 90 F.3d 861 (4th Cir.1996). In Tipton we emphasized the context in which the voir dire was conducted, particularly the way in which the jurors were reminded of the need to consider and weigh mitigating evidence:
[T]he district court first explained to each juror that if guilt of a capital offense was found in a first stage of the trial, the jury would then consider whether to impose the death penalty in a second stage at which the Government would try to convince the jury that aggravating factors warranted death while the defense would try to convince the jury that because of mitigation, death was not appropriate, and that this was then to be decided by the jurors on the basis of that evidence and the court’s instructions on the law. Against this background, the court then asked each prospective juror: “[D]o you have strong feelings in favor of the death penalty?” If the juror answered with an unqualified “No,” the court moved on.
Tipton, 90 F.3d at 878. We concluded that “[u]nder all of the circumstances,” the district court’s voir dire did not violate Morgan. Id. at 879 (emphasizing “the question’s logical adequacy to address the ultimate issue of death-penalty impartiality, the context in which it was put, [and] the court’s repeated admonitions that under the law consideration of mitigating factors would be required”). Whereas the venire members in Tipton were made explicitly aware of the particular context in which their feelings on the death penalty were deemed relevant — Their obligation to weigh aggravating and mitigating evidence at sentencing- — the venire members for Oken’s trial were given no such information.
The voir dire conducted in this case could not reliably identify jurors who would invariably impose the death penalty based solely upon the crimes for which the defendant was convicted. As a result, I cannot discount the possibility that such jurors in fact sat on Oken’s jury and voted for his death. Ambiguous, unfocused, and devoid of any context that would direct jurors to examine their ability to consider evidence offered in mitigation, the voir dire for Oken’s trial violated the central requirement of Morgan. The Maryland Court of Appeals’ conclusion that Morgan was satisfied thus was “contrary to” clearly established Supreme Court precedent. If the merits of that decision were before us, I would vote to grant the writ of habeas corpus and allow the State of Maryland to conduct a second sentencing proceeding.

. See Witherspoon v. Illinois , 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Witherspoon permits voir dire to determine whether a potential juror would always refuse to impose the death penalty upon conviction. “Reverse Witherspoon " voir dire is intended to determine a pro-death bias on the part of a prospective juror. See Morgan, 504 U.S. at 722, 112 S.Ct. 2222.

. Oken did state in his reply brief, in a footnote, that he had not waived his claim for ineffective assistance of appellate counsel. In order to preserve an issue on appeal, however, it is not enough simply to assert the claim; a party must provide supporting argument. See Federal Land Bank, 406 A.2d at 935-36.

. For instance, a juror might answer the trial court’s question by saying that he does not have strong views on the death penalty, believing that it is warranted in some circumstances while not in others. See, e.g., JA 366 (statement of venire member K.: “I believe that [the death penalty] should be used when it's necessary.”); JA 388 (statement of venire *275 member B.: "it depends what the crime is ..JA 397 (statement of venire member S. that "maybe” she has strong feelings about the death penalty; "it depends upon the situation"). These seemingly evenhanded responses easily might conceal an uncompromising -belief that' death is invariably warranted for patricides, infanticides, or murder-rapes, for example.